JAMES R. LYNN v. H. A. WHEELER AND R. P. HARRISON, JR., TRADING AS ROBINWOOD RACE TRACK.

(Filed 11 December 1963.)

1. Negligence § 24a—

In order to be entitled to have the issue of negligence submitted to the jury, plaintiff must offer evidence permitting a legitimate inference of defendant's negligence in regard to at least one of the particulars asserted in the complaint and that such negligence proximately caused plaintiff's injury.

2. Games and Exhibitions § 2—

The operators of an automobile race track are not insurers of the safety of a patron but are under duty to exercise care commensurate with the known or reasonably foreseeable dangers to prevent injury.

**3. Same— Evidence held insufficient to make out case of negligence on part of proprietors of race track.**

Plaintiff was injured when hit by a wheel cast from a racing car as it was negotiating the fourth turn during the last race. Plaintiff's evidence was to the effect that the track was smooth at the beginning of the race but that after about two and one-half hours of racing a depression developed between the third and fourth turns, and there was no evidence that the barriers for the protection of patrons provided by defendant were lower than was the custom in the business or that injuries to patrons might reasonably have been foreseen unless a higher fence or barrier was erected. *Held:* The evidence fails to disclose negligence on the part of defendant in regard to the erection of barricades or in the maintenance of the track, and there being no evidence of negligence on the part of defendant in respect to the other particulars alleged in failing to provide adequate lights or in failing to inspect and prevent unsafe vehicles from entering the race, nonsuit was proper.

APPEAL by defendants from *Riddle, J.,* April 8, 1963 Civil Session, GASTON Superior Court.

The plaintiff instituted this civil action to recover damages for the personal injuries he sustained while a spectator at defendants' automobile race track. The plaintiff was attending a regularly scheduled race on the night of September 2, 1961. He purchased a ticket and took a seat in the third row up in the grandstand, not far from the fourth turn of the track. In the last, or feature race, a right rear wheel on one of the racing vehicles separated from the vehicle and ran against a dirt embankment between the track and the grandstand, vaulted the barricades, struck the plaintiff, inflicting serious injuries. The plaintiff alleged the injuries were caused by the defendants' negligent failure (1) to erect adequate barricades to protect the customers from flying wheels or other parts from the racing vehicles, (2) to provide adequate lights so that customers could see and dodge flying wheels, (3) to maintain the track so that the racing vehicles would not cast wheels or loose parts, (4) to take corrective measures to protect customers from the hazards incident to racing at the Robinwood track, (5) to provide adequate inspection to discover and prevent the entry into the race of unsafe vehicles.

The defendants denied all allegations of negligence and alleged as further defenses (1) the plaintiff was familiar with automobile racing, knew the dangers thereof, nevertheless voluntarily exposed himself, (2) at the time of the accident the plaintiff was under the influence of intoxicants which prevented him from seeing and dodging the loose wheel as other customers near him had done, (3) the flying wheel vaulted into the air to a height of approximately 50 feet and over the barricade in a manner so unforeseeable as to be the result of an unavoidable accident.

At the close of the plaintiff's evidence the defendants moved for involuntary nonsuit. The court overruled the motion and submitted two issues to the jury: (1) The defendants' negligence and (2) the plaintiff's damages. The court refused to submit an issue of contributory negligence tendered by the defendants. The jury answered the issue of negligence against the defendants and awarded the plaintiff $70,000.00 in damages. From the judgment in accordance with the verdict, the defendants appealed, assigning numerous errors.

*Whitener & Mitchem, Basil L. Whitener, Wade W. Mitchem for plaintiff appellee.*

*Kennedy, Covington, Lobdell & Hickman by W. T. Covington, Jr., Edgar Love, III, for defendant appellants.*

HIGGINS, J.   In this case the plaintiff alleged the defendants in five particulars failed to exercise reasonable care for his safety while he was attending their automobile races as a paying customer; and that their negligence as charged proximately caused his injury and damage. Proof substantially as alleged in at least one of the particulars is essential to recovery. *Messick v. Turnage,* 240 N.C. 625, 83 S.E. 2d 654; *Smith v. Barnes,* 236 N.C. 176, 72 S.E. 2d 216. The motion to nonsuit challenged the sufficiency of the evidence to go to the jury on any of the particulars alleged. To support a verdict there must be both allegation and corresponding proof. *Chambers v. Allen,* 233 N.C. 195, 63 S.E. 2d 212; *Maddox v. Brown,* 232 N.C. 542, 61 S.E. 2d 613. The evidence must permit a legitimate inference of defendants' actionable negligence and plaintiff's resulting injury and damage.

The plaintiff failed to offer any proof either (2) that lighting of the track was inadequate or (5) that there was a negligent failure to inspect the vehicles entered in the race. There was no evidence of failure to inspect or that the Hudson when it entered the race was mechanically defective in any manner which reasonable inspection would have disclosed. (3) With respect to the condition of the track, the plaintiff's witness McRainey, a spectator, testified: "At the beginning of the race the condition of the track was smooth. At the end of the race the track was in fair to good condition. That night there was a small beating out or hole effect between the third and fourth turns, . . . not a large area, approximately a foot wide, two or three feet long. . . . It was not over three to four inches deep. . . . The hole began to appear during the final race . . . I did not see the wheel come off. The car was in the fourth turn when I first saw it after the wheel was dropped. The wheel was ahead of the car at the time I saw it."

Plaintiff's witness Carson testified: "(H)is right rear tire came off just as he came out of the turn. . . . The car . . . spun and the tire came off the car, hit the bank and went straight up and over," into the stands. Plaintiff's witness Fox testified: "I saw the Hudson come out of the fourth turn and it looked like the wheel came off of it and hit the bottom of the bank and shot straight up and came over;" into the seats provided for spectators.

According to all the evidence the accident occurred during the last or feature race. The track had been used for about two and one-half hours for other races, including the warmup or trial heat for the feature. Nothing in the evidence indicates the condition of the track surface was unusual or dangerous. The evidence disclosed the Hudson spun in negotiating the fourth turn, cast the wheel, injuring the plaintiff. The depression in the track was between the third and fourth turns—not in the turn where the Hudson went out of control. The depression developed during the last race. The evidence offered was insufficient to permit any inference the defendants were negligent in maintaining the track.

Specification No. (4) is embodied in No. (1) since the injury alleged was caused by a flying wheel while the plaintiff was in the viewing stands. Consequently the plaintiff must get to the jury, if at all, on specification No. (1)—failure to erect adequate barriers to protect spectators during the races.

(1) According to all the evidence the racing surface was excavated, leaving a dirt bank three to four feet high alongside the track between it and the viewing stands. The bank originally was perpendicular. However, erosion from the top had reduced it slightly from a vertical angle. A few feet from this bank the defendants had erected a chain fence to a height of three to four feet. This fence was secured to light poles about 45 feet apart. Above the chain fence for its full length and likewise secured to the light poles, the defendants had erected a fox wire barricade to an additional height of six to eight feet. The plaintiff testified he occupied a seat on the third row from the bottom behind the barricade. Other witnesses said he was eight to ten rows back of the barricade. The closest seats to the track were 15 to 20 feet from the embankment. The racing Hudson went into a spin at the turn. The right rear wheel broke loose, ran ahead of the vehicle on the track until it struck the dirt bank, vaulted the entire barricade and landed in the stands, injuring the plaintiff.

The plaintiff testified he had been to other tracks at Lowell, Hickory, Charlotte, North Wilkesboro, and Martinsville, Virginia. The Lowell barricades consisted of two heavy boards secured to poles five

or six feet high. However, he admitted these boards were on the inside of the track to protect the infield enclosure. He also testified that some kind of wire which "looked heavy" goes all the way up to the top of the grandstand at Hickory. No evidence was given as to its height. If any barricades existed at the other tracks with which he is familiar, he did not testify with respect thereto, neither did he offer evidence of the condition at other race tracks.

The plaintiff, a paying customer, was an invitee at the race. The defendants, though not insurers of his safety, nevertheless were charged with the duty of exercising reasonable care for his safety. Justice *Bobbitt*, in *Lane v. Drivers Association*, 253 N.C. 764, 117 S.E. 2d 737, quoting from *Justice Parker* in *Williams v. Strickland*, 251 N.C. 767, 112 S.E. 2d 533, fixes the test by which to determine a race track operator's liability to his customers: "The general rule is that the owner or operator of an automobile race track is charged with the duty of exercising reasonable care, under the circumstances present, for the safety of patrons, that is a care commensurate with the known or reasonably forseeable danger."

*Justice Parker*, in *Williams v. Strickland, supra*, amplifies the rule: "If the need is obvious or experience shows that an automobile race of the character and in the place proposed requires, in order to afford reasonable protection to spectators, the erection of fences or similar barriers between the track and the places assigned to them, it becomes a part of the duty in exercising reasonable care for their safety to provide fences or barriers, the adequacy of which is dependent on the circumstances present, *principally the custom of the business*." (emphasis added). Here no evidence is offered to show any custom at other tracks operated under like circumstances, except at Lowell and Hickory as previously noted.

The record fails to show facts from which the jury may infer that a barrier higher than 13 to 16 feet was the custom of the business or that injury to some spectator similarly situated is reasonably foreseeable unless a higher fence or barrier is erected. If a higher fence is standard for the business, evidence to that effect should have been offered.

After careful consideration we conclude the evidence disclosed by the record is insufficient to permit any inference of actionable negligence on the part of the defendants. The court should have allowed the demurrer to the evidence. The other serious questions raised by the appeal do not require discussion. The judgment entered in the court below is

Reversed.