## CIRCUIT COURT OF FREDERICK COUNTY

Bauer

v.

G. W. Motors, Inc.

February 23, 1983

Case No. (Law) 4068

By JUDGE ROBERT K. WOLTZ

Plaintiff Bauer took his disabled European-make car to defendant G. W. Motors, Inc., for repairs. He was forewarned by defendant's employee a considerable time would be required to obtain a necessary part so the "down" car was parked to the rear of the garage building on an asphalt area behind which lay open fields and woods. Automatically activated high intensity lights at the back corners of the building cover this area. In the front of the garage building between it and the highway, a number of new and used cars in the defendant's inventory, as well as customers' cars, are parked in a lot lighted by high intensity lights, but no type of fencing exists around this lot or the parking area at the rear of the garage building.

Something over three weeks later, the car was broken into and stereo sound equipment was ripped out and stolen, along with a number of sound tapes. Plaintiff sued on the bailment *ex contractu* for the loss of the stereo equipment and tapes and for damages to the car in effecting the thefts. Trial by jury resulted in a verdict for the plaintiff in the amount of $472.27. Notation on the verdict

sheet indicates that plaintiff was given recovery for everything but the stereo tapes. Plaintiff's testimony concerning their number and their value was indefinite enough that the jury could have found he failed to prove this item by a preponderance of evidence.

Defendant's general manager testified that the garage parking lots are lighted, that police patrol them and the cars parked there, including more than $1,000,000.00 in defendant's inventory, are kept locked, an employee being assigned to see that they are kept locked; that there is no fencing and that he is familiar with the trade custom in this area to keep cars outside, locked in lighted lots without fencing, and that it is not the custom to have fencing all around the garage lots. The general manager of another area garage testified as to his familiarity with trade custom in this area relating to security measures for customers' cars and that no car dealers in the area fence their lots, relating a couple of security reasons for that procedure. Plaintiff cross-examined these two witnesses but presented no evidence of his own on existence of the custom testified to. Defendant maintains that the verdict should be set aside as there is uncontradicted evidence of trade usage and custom in the area as to security measures used concerning cars parked at commercial garages which shows the defendant was in compliance with such usage, as a consequence of which defendant has sufficiently demonstrated its lack of negligence as bailee.

Where the bailor brings an action *ex contractu* relying on his contract of bailment with the bailee and not pitching his right of recovery *ex delicto* on the bailee's negligence, if the bailor proves delivery of the article to the bailee and the bailee's failure properly to return it, then the bailor has made out *prima facie* his case for recovery. In that event the bailee is liable upon the contract unless he can show his failure to redeliver the chattel was without his fault or negligence, which is an affirmative defense. The burden of proving this defense rests upon the bailee, and there is no ultimate burden on the bailor to prove bailee's negligence. *Revenue Aero Club v. Alexandria Airport*, 192 Va. 231 (1951); *Glenn v. Haynes*, 192 Va. 574 (1951); *Miller v. Tomlinson*, 194 Va. 367 (1952); *Canty v. Wyatt Storage Corp.*, 208 Va. 161 (1967).

There is no dispute that plaintiff under the foregoing principles made out a *prima facie* case for damages under the bailment contract. Defendant asserts, however, that it has borne the burden of proving it was not negligent. Defendant rests this claim on the principle which appertains in this jurisdiction that the general usage or custom in some trade or line of business in a particular situation is evidence of what is reasonable action in that situation, and from this and any other relevant facts there may be, the jury are to determine the question of negligence. If no conflict exists as to the general usage and nothing shows that the usage did not afford reasonable and safe care, "then the usage itself is conclusive evidence of the exercise of ordinary care, and no verdict to the contrary should be upheld." *Jeffress v. Virginia Ry. Co.*, 127 Va. 694, 726 (1920). To the same effect see *Virginia Stage Lines v. Newcomb*, 187 Va. 677 (1948); *Andrews v. Appalachian Electric Power*, 192 Va. 150 (1951); *C & M Promotions v. Ryland*, 208 Va. 365 (1967); *Richmond v. Atlantic Co.*, 273 F.2d 902 (4th Cir. 1960).

The defendant claims that its evidence establishes the universal usage or custom in the commercial garage business in this area, that there is no contradiction of that evidence and, as a consequence, the usage becomes the standard of care and, measuring up to that standard, the defendant has absolved himself of any negligence with respect to the bailed property.

The burden is on the party alleging a custom or usage to prove it. 5 M.J., *Customs and Usages* § 4. Testimony as to usage is relevant and competent only where the witness testifying in that regard is knowledgeable and experienced on the matter, *Craddock Mfg. Co. v. Faison*, 138 Va. 665 (1924), and it is possible that one witness with sufficient knowledge and experience on the subject and not being contradicted may establish a custom or usage. *Southwest Virginia Mineral Co. v. Chase*, 95 Va. 50 (1897). Nevertheless, the existence or non-existence of a custom or usage is a fact question to be determined by the jury "under proper instructions from the court," *Craddock Mfg. Co., supra.*

Additional pertinent evidence as photographs taken the night before trial (November 4) by the plaintiff. He testified to investigating personally and finding no

lights burning at the rear of the garage. The manager testified the timer for the lights had not been changed since daylight saving time ended, and that he could not estimate the number of cars on the garage lot which had been the subject of vandalisms and thefts.

Based on all the circumstances of the case, the motion to set aside the verdict is denied.

First, the jury was not instructed on the subject of custom or usage. No instruction was requested and none was given on the Court's own motion. Had the jury been instructed on the subject, their verdict may have been different. (The jury were properly instructed that if the defendant proved by the greater weight of the evidence that it used due care, their verdict should be in its favor.)

Second, the jury could well have concluded that the custom or usage in this case was one adopted primarily as a standard of care with respect to the inventory of new and used cars of commercial garages in the area. The garage proprietors know the extent of their own insurance against theft and other losses as to cars which they own. They do not know the same with respect to the cars of their customers. The manager of the defendant testified that reasons for not having fencing were that it was expensive, it impeded the police in patrolling the lots, and it made the lots less accessible to prospective and actual customers. Thus, other elements than exercise of ordinary care appear to be elements in the custom or usage claimed by the defendant.

Furthermore, the custom or usage was not delineated as to whether it applied only to parking lots in front of or beside the garage buildings and hence readily visible from public ways or whether it also applied to parking areas behind garage buildings less open to public view. In any event, the jury may have found that what was adequate in the former circumstance was negligence in the latter. Whether reasonable care was exercised by the defendant was a question for the jury. *Miller v. Tomlinson, supra.* "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." *Limberg v. Lent*, 206 Va. 425, 430 (1965).

The draft order entering judgment on the verdict which was previously presented is being entered this same date.